UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                             **Plaintiff,**<br><br>                             **v.**<br><br>**NICHOLAS BOWERMAN,**<br><br>                             **Defendant.** | Case No. 1:24-cv-12282<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against Defendant Nicholas Bowerman ("Bowerman"), and alleges as follows:

**SUMMARY**

1. This matter involves accounting and disclosure fraud perpetrated by Bowerman, a resident of the United Kingdom, and a former finance director at Pipeline Engineering ("Pipeline"), a business unit of CIRCOR International, Inc. ("CIRCOR"), a former publicly traded company based in Massachusetts.

2. From at least the first quarter of 2019 and continuing through the third quarter of 2021, Bowerman intentionally manipulated Pipeline's financial results, which were incorporated into CIRCOR's consolidated financial statements. Bowerman sought to make Pipeline appear more profitable and financially stable than it actually was to help it meet its financial targets and preserve his own job.

3. Bowerman carried out his fraud by knowingly or recklessly making unsupported and unauthorized journal entries and other adjustments to Pipeline's books and records. Bowerman, for example, artificially inflated lease-related assets and reduced lease-related

liabilities, as well as overstated balances in bank accounts held in the United Arab Emirates ("UAE bank").

4. Bowerman concealed his misconduct by, among other means, circumventing CIRCOR's internal accounting controls by manipulating account reconciliations and business reports and falsifying certifications; fabricating bank confirmation statements; altering emails; and misleading CIRCOR management and its independent auditors.  As a result, Bowerman's misconduct went undetected until the audit of CIRCOR's 2021 financial results.  When Bowerman was confronted on at least one occasion in March 2022, he acknowledged he altered financial reports and fabricated bank confirmations out of a desire to meet financial targets and keep his job.

5. As a result of Bowerman's manipulation of Pipeline's financial results, Bowerman caused CIRCOR to: (1) overstate 2019 operating income by $7.2 million, or 24%; (2) understate 2020 operating loss by $34.5 million, or 36%; and (3) understate the nine-month period ended October 3, 2021 operating loss by $12.5 million, or 120%.

6. On July 26, 2022, CIRCOR filed its 2021 Form 10-K that contained restated financial statements for 2019 and 2020, and for 2021, the quarterly and year-to-date periods to October 3, 2021.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

8. Defendant directly and indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the transactions, acts, practices, or courses of business alleged herein.

Defendant's conduct had a foreseeable substantial effect within the United States by manipulating financial results of a business unit that were consolidated with, and incorporated into, the financial results of CIRCOR, a U.S. based public company, and included in CIRCOR's current, periodic, and annual reports it filed with the Commission.

9.      Venue lies in this judicial district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].  During the relevant period, CIRCOR had its principal place of business in Massachusetts.  Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District and were carried out, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange, including by sending fabricated documents to CIRCOR's corporate offices and auditors located in Massachusetts.

## **DEFENDANT**

10.     **Nicholas Bowerman**, age 48, is a resident of Darlington, England.  He was the finance director at CIRCOR's Pipeline business unit based in England from February 2011 until his termination in March 2022.  Between 1997 and 2010, Bowerman worked in accounting and financial reporting roles for subsidiaries of other former U.S. publicly traded companies where he was responsible for, among other things, preparing periodic financial statements and implementing internal accounting controls.  Bowerman holds a Chartered Global Management Accountant (CGMA) designation and Associate Chartered Management Accountant (ACMA) designation from the Chartered Institute of Management Accountants.

## RELATED ENTITIES

11. **CIRCOR International, Inc.** is a Delaware corporation headquartered in Burlington, Massachusetts, that manufactures technology productions and sub-systems for the industrial, aerospace, and defense markets. At all relevant times, CIRCOR's stock was registered under Section 12(b) of the Exchange Act and traded on the New York Stock Exchange under the ticker "CIR." CIRCOR also filed and furnished periodic reports, including Forms 8-K, 10-K, and 10-Q, with the Commission pursuant to Section 13(a) of the Exchange Act and related rules thereunder. Additionally, CIRCOR offered and issued securities in the form of restricted stock units to employees (including Bowerman), officers, and directors pursuant to its registration statements on Form S-8 filed on July 31, 2014 and May 14, 2019 that incorporated by reference CIRCOR's periodic filings made with the Commission. As a result of a merger, CIRCOR was de-listed from the New York Stock Exchange and terminated registration of its stock under Section 12(b) of the Exchange Act on October 30, 2023.

12. **Pipeline Engineering** was a CIRCOR business unit based in Catterick, United Kingdom, with additional operations in Houston, Texas, and Dubai, United Arab Emirates. Pipeline was a component of CIRCOR's industrial reportable segment, and designed, engineered, manufactured, and deployed pipeline equipment for the oil and gas industry. CIRCOR closed Pipeline in April 2022.

## TERMS USED IN THIS COMPLAINT

13. Generally Accepted Accounting Principles ("GAAP") refers to a common set of accounting rules, requirements, and practices issued by the Financial Accounting Standards Board and the Governmental Accounting Standards Board. Public companies in the U.S. (like

CIRCOR during the relevant time period) are required to follow GAAP when completing their financial statements.

## FACTS

14.  Bowerman was the finance director at CIRCOR's Pipeline business unit based in the United Kingdom from February 2011 until his termination in March 2022.

15.  As with many of CIRCOR's other business units during the relevant time frame, Pipeline was responsible for maintaining its own books and records in an independent local accounting system, referred to as IFS. However, Pipeline's financial results were transmitted monthly to CIRCOR's corporate offices in Massachusetts for inclusion in CIRCOR's consolidated financial statements via a separate internal accounting system, referred to as SAP Business Process Consolidation system ("BPC"). Bowerman was responsible for this process on behalf of Pipeline.

16.  At all times relevant to the allegations in this Complaint, CIRCOR implemented three internal accounting controls related to the transmission of financial results.

17.  First, CIRCOR required monthly reconciliations of the transmitted financial results and Pipeline's books and records.

18.  Second, CIRCOR required that each business unit (like Pipeline) compile and disseminate quarterly to leadership a Business Performance Review ("BPR") that analyzed balance sheet and income statement fluctuations. CIRCOR's policies and procedures required that, among other things, BPRs contained additional support corroborating unusual or unexpected financial results, including balance sheet and income statement line items that materially increased or decreased during the relevant period.

19. Third, CIRCOR required each business unit finance director, like Bowerman, to certify monthly that, among other things, the business unit financial statements were complete, correct, and accurate.

20. As Pipeline's finance director, Bowerman was responsible for, among other things, ensuring the completeness and accuracy of the business unit's books and records, and implementing each of these internal accounting controls and accounting policies at Pipeline. Although Bowerman was supported by two bookkeepers, he was otherwise the only employee at Pipeline with financial reporting responsibilities. As such, Bowerman was solely responsible for migrating Pipeline's financial results from IFS to BPC, as well as reconciling those amounts, preparing Pipeline's BPRs, and certifying that Pipeline's financial statements were complete, correct, and accurate.

21. Exporting the financial results from IFS and importing them into BPC required Bowerman to upload and transmit data which provided him an opportunity to alter the actual financial results.

22. Bowerman understood that Pipeline's financial statements were included in CIRCOR's consolidated financial statements filed with the Commission. As a result, he knew, or was reckless in not knowing, that his manipulation of Pipeline's books and records could have a material impact on CIRCOR's consolidated financial statements.

**A.    Bowerman's Fraud**

23. From at least the first quarter of 2019 and continuing through the third quarter of 2021, Bowerman used his access to both IFS and BPC accounting systems to artificially inflate Pipeline's financial condition, cash flows, and results of operations.

24. Bowerman executed his scheme by repeatedly making unsupported and unauthorized accounting adjustments to the local accounting system's financial results before transmitting the results to the consolidation system without anyone knowing that he had manipulated the results. Bowerman's false entries included, but were not limited to, overstated cash balances in the UAE bank accounts, artificially increased lease-related assets, and reduced lease-related liabilities.

25. Bowerman's illicit adjustments caused Pipeline's net assets recorded in BPC to exceed Pipeline's actual net assets recorded in IFS in amounts ranging from $14.4 million to $24 million for the relevant periods.

26. Bowerman also overstated Pipeline's cash balances in the accounts held at the UAE bank by millions of dollars during the relevant period: $8.9 million as of December 31, 2019, $10.2 million as of December 31, 2020, and $13.1 million as of September 30, 2021.

27. For example, for the year end 2020 bank reconciliations, Bowerman inflated the cash balance of a Pipeline UAE bank account by over $10 million, changing the amount from $2,978 in the local accounting system to $10.2 million when uploading to CIRCOR's consolidated system.

28. In addition, from the first quarter of 2019 through the third quarter of 2021, Bowerman made over $3.5 million in large, round number, unsupported, and unauthorized adjustments to increase lease-related assets and reduce lease-related liabilities.

29. In just the first nine months of 2021 (to October 3, 2021), Bowerman's improper adjustments caused Pipeline's capitalized operating lease assets to increase by $1.35 million, from approximately $2.27 million to approximately $3.62 million, and its lease-related

7

liabilities to decrease by nearly $2.22 million, from approximately $2.30 million to approximately $77,000.

30. For example, in September 2021, in the lease-related accounts for Pipeline's U.K. location, Bowerman made a £400,000 (approximately $539,000) entry to increase its capitalized operating leases and a £300,000 (approximately $404,000) entry to reduce the accumulated amortization–a contra-asset account–on its leased assets. These adjustments inflated Pipeline's total assets by £700,000 (approximately $943,000).

31. Similarly, in September 2021, in Pipeline's Houston location, Bowerman made entries of $100,000 and $600,000 to reduce the short-and long-term components of its lease-related liabilities, respectively, which reduced Pipeline's liabilities by $700,000.

**B.     Bowerman's Attempts to Conceal His Misconduct**

32. Bowerman attempted to conceal his improper entries in a number of ways, including by circumventing CIRCOR's internal accounting controls and fabricating bank documents to support his entries that artificially inflated Pipeline UAE bank account cash balances.

33. Bowerman had direct access to Pipeline's UAE bank accounts, unlike anyone in CIRCOR corporate, including corporate treasury. This allowed Bowerman to fabricate certain bank documents and avoid detection.

34. For instance, in January 2020, while CIRCOR was preparing to file its 2019 Form 10-K, Bowerman falsified a UAE bank account balance report to make it appear that the account balance as of December 31, 2019 was 33,414,390 AED (approximately $9 million), when the actual balance in the UAE bank account was 434,060 AED (approximately $117,000).

35. Bowerman also manipulated an October 30, 2019 email from the UAE bank to make it appear that the email was sent to him. On January 23, 2020, Bowerman forwarded the manipulated email, and attached the falsified December 31, 2019 UAE bank account confirmation, to CIRCOR's Chief Accounting Officer with the message "[r]eceived the attached from our Middle East Bank in response to the request I sent last night."

36. On February 25, 2020, after CIRCOR's external audit firm requested that Bowerman arrange for the UAE bank to send an account balance confirmation directly to the audit firm, Bowerman sent, via email, a fabricated UAE bank account confirmation to two UAE-based CIRCOR employees. In the email, Bowerman asked a CIRCOR employee to print the fabricated UAE bank account confirmation and send it to the audit firm, and added, "[n]o need to put anything else on the envelope, they just need the report to come from UAE[.]"

37. Shortly after, Bowerman informed CIRCOR corporate accounting that he had asked the UAE bank to send the confirmation to the audit firm by mail because of a purported problem with email spam filtering.

38. On February 27, 2020, Bowerman informed a CIRCOR UAE-based employee that, per internal audit's instructions, the UAE bank could send the file that already existed directly to the external audit firm. As a result, the CIRCOR employee forwarded the fabricated account confirmation, which Bowerman had created, to an employee of the UAE bank, and the CIRCOR employee asked the UAE bank employee to send it directly to the audit firm. Rather than confirm the actual account balance, the UAE bank employee simply sent the fabricated confirmation directly to the audit firm via e-mail.

39. By taking the actions described above, Bowerman knowingly or recklessly caused the UAE bank to forward the fabricated UAE bank confirmation to the external auditors.

9

40. The external auditors relied on the fabricated UAE bank confirmation during their audit of CIRCOR's financial statements.

41. Bowerman also circumvented CIRCOR's internal accounting controls by manipulating reconciliations to make it appear that the data, including total assets, liabilities, equity, and income, from Pipeline's local system was consistent with the data from CIRCOR's consolidation system.

42. For example, on a monthly basis in 2021, Bowerman uploaded large spreadsheets saved as illegible PDF files to CIRCOR's internal control system and approved them. Bowerman did so to create the false appearance that Pipeline's data was reconciled as required by CIRCOR's internal accounting controls.

43. Additionally, Bowerman prepared BPR reports containing bogus explanations of fluctuations in Pipeline's books and records. For example, in the third quarter 2021 BPR report, Bowerman indicated that the large increase in its lease-related assets and the large decrease in its lease-related liabilities was due to "asset leases from Corporate," which gave the appearance that the transactions were initiated and approved by CIRCOR's corporate offices. In reality, as Bowerman knew, those fluctuations resulted from his unauthorized and unsupported entries.

44. For 2019 and 2020, Bowerman received approximately £13,000 (approximately $17,000 based on the average exchange rate in 2021) in bonuses based upon Pipeline's inflated financial results.

C. **Bowerman's Fraud Discovered**

45. In February of 2022, CIRCOR and external auditors began a closer inspection of Pipeline's financial results, and by late February of 2022, CIRCOR and the external auditors

had concerns regarding the unusual, round numbers that Bowerman had been responsible for both inputting and verifying.

46.     In early March of 2022, Bowerman was asked to provide support for certain numbers in Pipeline's revenue records.

47.     Bowerman stated, in sum and substance, that he made manual and unsupported adjustments that overstated revenue and, in turn, overstated earnings.  Bowerman also acknowledged falsifying UAE bank account confirmations to support the falsely inflated higher balances he had reported.  Bowerman explained that he had overstated Pipeline's earnings to meet target earnings for Pipeline, and that he was motivated to do so by a desire to keep his job.

    **D.**    **CIRCOR's Restatement**

48.     On March 14, 2022, CIRCOR announced that the financial statements for the years ended December 31, 2019 and December 31, 2020 included in its annual Forms 10-K and the quarterly and year-to-date periods ended March 29, 2020, June 28, 2020, September 27, 2020, April 4, 2021, July 4 2021, and October 3, 2021 included in its Forms 10-Q should no longer be relied upon.

49.     On July 26, 2022, CIRCOR filed its 2021 Form 10-K that contained restated financial statements for the periods referenced in its March 14, 2022 announcement.  As reflected below, Bowerman's misconduct caused CIRCOR to: (1) overstate 2019 operating income by $7.2 million, or 24%; (2) understate 2020 operating loss by $34.5 million, or 36%; and (3) understate the nine-month period ended October 3, 2021 operating loss by $12.5 million, or 120%.

| (in 000's) | For the Year Ended: | | For the Nine Month Period Ended: |
|---|---|---|---|
| | 12/31/2019 | 12/31/2020 | 10/3/2021 |
| Operating Income (Loss), As Reported | $ 37,681 | $ (60,446) | $ 2,122 |
| *Reporting Errors Attributable to:* | | | |
| Pipeline Engineering | $ (7,208) | $ (13,105) | $ (11,218) |
| Incremental Goodwill Impairment | $ - | $ (21,896) | $ - |
| Other Immaterial Areas | $ - | $ 500 | $ (1,276) |
| Subtotal, Reporting Errors | $ (7,208) | $ (34,501) | $ (12,494) |
| Operating Income (Loss), As Adjusted | $ 30,473 | $ (94,947) | $ (10,372) |
| *% Impact of Reporting Errors on Operating Income (Loss)* | 24% | -36% | -120% |

50. As reflected in the table above, Bowerman's misconduct also caused an adjustment to CIRCOR's Q1 2020 goodwill impairment assessment. The company concluded that, had it incorporated reliable Pipeline financial results and forecasts into its Q1 2020 goodwill impairment assessment, it would have recorded an incremental $21.9 million impairment charge.

51. In connection with the restatement, CIRCOR also disclosed that it had identified material weaknesses in its internal control over financial reporting, including that: (1) CIRCOR did not ensure adequate segregation of duties concerning the preparation and reconciliation of business unit financial statements and accounting systems access; and (2) CIRCOR did not adequately monitor bank accounts and related activity.

52. CIRCOR's controls granted Bowerman access to both IFS, Pipeline's local accounting system, and BPC, CIRCOR's consolidation system. Bowerman was also solely responsible for both the transmission of the financial statements of Pipeline, and the duty of reconciliation to verify their accuracy. Bowerman was tasked with maintaining and implementing CIRCOR's controls at Pipeline, but knowingly made unauthorized and

unsupported adjustments to Pipeline's records, manipulated account reconciliations, and circulated inaccurate BPR reports.

53. Additionally, no one at CIRCOR corporate, including corporate treasury, had direct access to Pipeline's UAE bank accounts, which allowed Bowerman to make unsupported and unauthorized entries to increase Pipeline's cash balances and fabricate account balance reports to conceal his fraudulent adjustments.

54. As a result of Bowerman's manipulation of Pipeline's financial data, account reconciliations, and BPR reports, CIRCOR did not make and keep books and records that accurately reflected the company's transactions. Bowerman knowingly provided substantial assistance to CIRCOR, an issuer of securities registered under Section 12 of the Exchange Act. CIRCOR made material misstatements concerning its operating income in 10-Ks, 10-Qs, and 8-Ks containing earnings announcements from the first quarter of 2019 and continuing through the third quarter of 2021.

55. Bowerman's manipulations also prevented CIRCOR from devising and maintaining a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization and recorded as necessary to maintain accountability for assets; and (ii) to permit preparation of financial statements in conformity with GAAP.

## THE DEFENDANT VIOLATED THE ANTIFRAUD PROVISIONS OF THE FEDERAL SECURITIES LAWS

56. Bowerman knowingly or recklessly engaged in a device, scheme, or artifice to defraud in the offer or sale of a security, and engaged in any "transaction, practice, or course of business" which operated or would operate as a fraud or deceit upon the purchaser(s) of CIRCOR stock, from the first quarter of 2019 through the third quarter of 2021.

57. Bowerman knowingly or recklessly made unauthorized and unsupported adjustments to Pipeline's financial statements to create the appearance that the business unit was profitable and financially stable when he knew, or was reckless in not knowing, that these inaccurate results would be reported in CIRCOR's consolidated financial statements. Bowerman knew, or was reckless in not knowing, that his action could lead to materially misleading consolidated financial statements being released to the public and filed with the Commission.

58. Bowerman knowingly fabricated bank documents to align with his falsely inflated cash balances and manipulated account reconciliations.

59. Bowerman provided CIRCOR corporate management and its external auditors fabricated bank statements reflecting manipulated UAE bank account cash balances. In a further attempt to circumvent CIRCOR's internal accounting controls and external audit and hide his fraud, Bowerman manipulated email messages to cause a UAE bank employee to send the fabricated bank statement to CIRCOR's audit firm.

60. Bowerman signed false quarterly certifications to CIRCOR's senior management representing that Pipeline's books and records were "complete, correct, and accurate." Bowerman knew or was reckless in not knowing that the certifications were false.

61. Bowerman was paid incentive compensation tied to Pipeline's financial results, and therefore, received additional compensation as a result of his fraud.

62. Bowerman's improper adjustments to the financial statements were material. His misconduct caused significant accounting errors that resulted in CIRCOR restating nearly three years of financial statements. As a result of his misconduct, Bowerman violated the antifraud provisions of the federal securities laws.

## FIRST CLAIM FOR RELIEF
### Fraud in Violation of Section 17(a) of the Securities Act

63. The Commission re-alleges and incorporates by reference paragraphs 1 through 62 above as if fully set forth therein.

64. By engaging in the conduct described above, Bowerman, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails,

   a. Knowingly or recklessly employed one or more devices, schemes, or artifices to defraud;

   b. Knowingly, recklessly, or negligently obtained money or property by means of one or more untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

   c. Knowingly, recklessly, or negligently engaged in any transaction, practice, or course of business which operated or would operate as a fraud or deceit upon purchasers.

65. By reason of the actions alleged herein, Bowerman violated, and unless enjoined, will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Fraud in Violation of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) Thereunder

66. The Commission re-alleges and incorporates by reference paragraphs 1 through 62 above as if fully set forth therein.

67. By engaging in the conduct described above, Bowerman, directly or indirectly, in connection with the purchase or sale of securities, and by use of means or instrumentalities of

interstate commerce, or the mails, or the facilities of a national securities exchange, has, knowingly or recklessly:

    a. employed devices, schemes, or artifices to defraud; and/or

    b. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

68. By reason of the actions alleged herein, Bowerman violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (c)].

### THIRD CLAIM FOR RELIEF
**Books and Records and Internal Accounting Controls Violations
Violation of Section 13(b)(5) of the Exchange Act and
Rule 13b2-1 Thereunder**

69. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 62 as if they were fully set forth herein.

70. By engaging in the conduct alleged above, with respect to CIRCOR's books, records and accounts from the first quarter of 2019 and continuing through the third quarter of 2021, Bowerman directly or indirectly, knowingly circumvented, or knowingly failed to implement, a system of internal accounting controls to assure that CIRCOR's financial statements were prepared in conformity with GAAP or knowingly falsified or caused to be falsified books, records, or accounts (as those terms are used in Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)]) of CIRCOR.

71. By reason of the actions alleged herein, Bowerman violated and, unless enjoined, will continue to violate, Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1] thereunder.

**FOURTH CLAIM FOR RELIEF**
**Periodic Reporting Violations-Aiding and Abetting**
**CIRCOR's Violation of Section 13(a) of the Exchange Act and**
**Rules 13a-1, 13a-11, and 13a-13 Thereunder**

72. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 62 as if they were fully set forth herein.

73. By engaging in the conduct alleged above, Bowerman knowingly provided substantial assistance to CIRCOR, an issuer of securities registered pursuant to Section 12 of the Exchange Act, which filed materially false and misleading current reports, materially false and misleading quarterly reports, and materially false and misleading annual reports with the SEC that made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, by making material misstatements concerning its revenue in 10-Ks, 10-Qs, and 8-Ks containing earnings announcements from the first quarter of 2019 and continuing through the third quarter of 2021, in violation of Section 13(a) of the Exchange Act, and Rules 13a-1, 13a-11, and 13a-13 thereunder.

74. By reason of the actions alleged herein, Bowerman aided and abetted CIRCOR's violations of, and, unless enjoined, will again aid and abet violations of, Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.13a-1, 240.13a-11, and 240.13a-13].

**FIFTH CLAIM FOR RELIEF**
**Record Keeping and Internal Controls Violations-Aiding and Abetting CIRCOR's**
**Violation of Section 13(b)(2) of the Exchange Act**

75. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 62 as if they were fully set forth herein.

76. By engaging in the conduct alleged above, with respect to CIRCOR's financial statements from the first quarter of 2019 and continuing through the third quarter of 2021, Bowerman knowingly provided substantial assistance to CIRCOR, which, in violation of Section 13(b)(2) of the Exchange Act, failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected CIRCOR's transactions and dispositions of its assets, and failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and any other criteria applicable such statements.

77. By reason of the actions alleged herein, Bowerman aided and abetted CIRCOR's violations of, and, unless enjoined, will again aid and abet violations of, Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a final judgment:

### Permanent Injunctions

Permanently restraining and enjoining Bowerman from directly or indirectly engaging in conduct in violation of the federal securities laws alleged in this Complaint.

Permanently prohibiting Bowerman from acting in an accounting or financial reporting role at a public company in connection with the preparation of financial statements filed with the Commission, providing substantial assistance to a public company in the preparation of financial statements filed with the Commission, or acting as an auditor on a public company audit.

For purposes of the preceding paragraph, the following definitions apply:

"Accounting or financial reporting role" means participating in the preparation of financial statements; decisions about financial reporting; the creation or implementation of accounting policies; or decisions about accounting treatment.

"Public company" means a company, foreign or domestic, that files financial statements with the Securities and Exchange Commission.

### Disgorgement and Prejudgment Interest

Ordering Bowerman to disgorge all ill-gotten gains received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)].

### Civil Penalty

Ordering Bowerman to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### Further Relief

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws.

### Demand for Jury Trial

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

Dated: September 5, 2024                     Respectfully submitted,

                                             */s/ Judson T. Mihok*
                                             Judson T. Mihok
                                             New York State Bar No. 2868446

Gregory R. Bockin
Brendan P. McGlynn
Christine R. O'Neil
Samika N. Osbourne
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
Phone: 215-597-6500
Fax: 215-597-2740
Email: mihokj@sec.gov